<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH ARUANNO, | Civil No. 11-5778 (WJM) |
| Plaintiff, | |
| | <u>OPINION</u> |
| v. | |
| DENNIS CAVANAUGH, et al., | |
| Defendants. | |

**APPEARANCES:**

    JOSEPH ARUANNO, #363
    Special Treatment Unit- Annex
    P.O. Box #CN905
    Avenel, NJ 07001

**MARTINI**, District Judge:

    Joseph Aruanno, who is civilly committed under the New Jersey Sexually Violent Predator Act, seeks to file a Complaint against Dennis M. Cavanaugh, United States District Court Judge, Steven Johnson, Assistant Superintendent of the Special Treatment Unit, and 20 John/Jane Does. This Court will grant Plaintiff's application to proceed <u>in forma pauperis</u>. See 28 U.S.C. § 1915(a). This Court has screened the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and, for the reasons explained below, will dismiss the Complaint with prejudice for failure to state a claim upon which relief may be granted.

**I.  BACKGROUND**

    Plaintiff has been civilly committed as a sexually violent predator since 2004. As explained by the Third Circuit Court of Appeals,

[i]n 1994, while in Florida, he exposed himself to two adolescent girls as they were walking home from school and engaged in lewd conduct in their presence.  As a result of this incident, Aruanno pled guilty to second-degree lewd conduct, and was sentenced to ten years' probation.  Just two years later, in 1996, Aruanno sexually molested an eight-year-old girl who had been playing on the front steps of her house in Wildwood, New Jersey.  A jury convicted Aruanno of second-degree sexual assault, and he was sentenced to ten years in prison, and disqualification from parole for five years.  The Appellate Division of the New Jersey Superior Court affirmed the conviction and sentence.  The New Jersey Supreme Court denied certification.  State v. Aruanno, 793 A. 2d 716 (N.J. 2002) (table op.).

In April 2004, while Aruanno was still serving his prison sentence, the State of New Jersey . . . filed a petition to involuntarily commit Aruanno pursuant to the New Jersey Sexually Violent Predator Act ("SVPA), N.J.S.A. § 30:4-27.24 et seq. . . . .

At the commitment hearing, the State presented the testimony of Dr. Vivian Shnaidman . . . .  Dr. Shnaidman testified that Aruanno was a chronic paranoid schizophrenic, but her diagnosis explicitly ruled out diagnoses of exhibitionism and pedophilia.  Nevertheless, Dr. Shnaidman opined that Aruanno's schizophrenia, when combined with his previous violent conduct, created a "very high" risk of future violence.  In particular, because Aruanno refused to take psychotropic medication to treat his schizophrenia, he would continue to suffer from psychotic delusions which would render sex offender treatment useless.  According to Dr. Shnaidman, Aruanno would have serious difficulty controlling his sexually predatory behavior without undergoing treatment for his schizophrenia . . . .

Aruanno testified on his own behalf at the hearing.  He denied committing either the Florida or the New Jersey offense, and testified that he believed the State had filed the commitment petition in retribution for his decision to go to trial for the New Jersey offense, rather than accepting a deal to plead guilty . . . .

The state court found that Aruanno suffered from a mental abnormality which created "substantial, significant, severe difficulty controlling his sexually violent behavior," and granted the State's petition for involuntary commitment.  Aruanno

> appealed the order, and the Appellate Division affirmed. In re Civil Commitment of J.A., 2007 WL 609284 (N.J. Super. Ct. App. Div. 2007).

Aruanno v. Hayman, C.A. No. 09-3499 slip op., pp. 2-4 (3d Cir. May 27, 2010).

In 2009, the Appellate Division of the New Jersey Superior Court reversed the Law Division's May 3, 2007, order denying post-conviction relief on the New Jersey conviction, vacated the conviction, and remanded the case.[1]  See State v. Aruanno, 2009 WL 1046033 (N.J. Super. Ct. App. Div. April 21, 2009), certif. denied, 199 N.J. 543 (2009) (table).

Since being detained in New Jersey, Mr. Aruanno has filed over 28 civil cases in this Court, and 27 appeals in the United States Court of Appeals for the Third Circuit.  In the Complaint presently before this Court, Plaintiff asserts that Judge Cavanaugh and Steven Johnson violated his rights as follows:

> Despite numerous persons having submitted numerous claims in the last ten years starting around #01-789 the U.S. District Court including Judge Dennis M. Cavanaugh have condoned not just civil rights violations but serious crimes being committed with impunity for almost 10 years now!
>
> \*          \*          \*
>
> And though assigned counsel has also permitted these violations at every step of the way counsel finally after years of broken promises filed a motion to assure we finally had a proper facility but due to its ineffectiveness and counsel[']s failure to reply to the state[']s brief defendant Cavanaugh was permitted to PRETEND he did not know which building we were going to despite having received at least 3 prior motions by residents pro se in light of counsel[']s incompetence and despite myself having replied to the state[']s motion objecting to counsel[']s motion for a TRO or a Temporary Restraining Order about the move.

---

[1] This Court was not able to determine through online research the outcome of the remand.

And proving defendant Cavanaugh[']s incompetence and criminal neglect, and/or accomplice, he chastised counsel about being wrong about which building in his order.  And deliberately distorted the entire ruling/order.

And this after the District Court agreed with the defendants choice fo an expert, Dr. Judith Becker, whom stated after many years of specializing in this field that she had, "INSPECTED MANY HOSPITALS AND PRISONS AND THESE ARE AMONG THE WORST SHE HAS EVER SEEN, ETC.", which has done serious irreversible harm to myself and all the residents for which Judge Dennis Cavanaugh is not only directly responsible for but personally in his official capacity as well as his personal capacity.

And where he made it personal was by avoiding the Motion(s) to Recuse himself and for substitute counsel.  Which forced me to file appeals in this matter to the 3rd Circuit Court of Appeals about consolidating the numerous complaints filed, because the court REFUSED to correct the issues in the first complaint, and where Judge Cavanaugh replied to my issue of Due Process or the delay and the harm it has caused that, "THE DEFENDANTS ARE TRYING TO WORK THIS OUT," which is the most delusional statement I have ever heard in my life proved by the MANY years of abuse and denial by the defendants and proved by this building they have moved us in.  For which ironically such statements and the lack of reality there are used to civilly commit people here for its pure insanity!

     *      *      *

The state started writing the SVP Civil Commitment Act in 1994 and since that time, over 16 years and counting, have REFUSED to place us in a proper facility or even allocate one penny for a proper therapeutic facility.  Which the NJ Appellate Division recognized in their order to move out of the Kearny facility.

And which was compounded by the fact that the best possible existing building which was fairly new and had everything none of the prior buildings had, or have, such as a gym; a fully equipped infirmary; proper law library; etc., which is crucial according to Dr. Becker, was Riverfront State Prison in Camden NJ, which was emptied last year . . .

> In closing, . . . I, and others, have been stripped naked and beaten, sometimes handcuffed, where I have been punched to the ground and kicked in the privates while the DOC has yelled "BABY RAPER," and "WE WORK FOR THE COURTS, THEY DON'T CARE," etc., as we see with Judge D. Cavanaugh and appointed counsel.  For which every time I lay there in a puddle of blood I swore Cavanaugh has this coming!
>
>       *       *       *
>
> And for which the relief I seek is IMMEDIATE Declaratory and Injunctive Relief, for which Dennis Cavanaugh has no type of immunity which also applies to his violations of Clearly Established Rights and other Constitutional obligations, to stop the harm these counterproductive prison facilities inflict.  Which would include either moving me to a proper facility in the EMERGENT matter this is, expediting as such, or to an out-patient program in keeping with the new Bill past by New Jersey last August, Chapter 112 which admits "OUTPATIENT TREATMENT IS THE BEST IN KEEPING WITH THE (LEAST RESTRICTIVE) ENVIRONMENT BEING BEST AND CONSIDERING THE (LIMITED ABILITY TO PREDICT FUTURE BEHAVIOR).  And which includes a TRO or an Injunction to stop the assaults and the threats against my life for which I have been told by staff if I file any more complaints against them they WILL KILL ME!
>
> And for which I also demand $10,000,000.00, Ten Million Dollars, for the physical and psychological harm being inflicted upon me including mental duress and anguish, etc . . . .

(Dkt. 1 at 6-9.)

## II.  STANDARD OF REVIEW

  The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding <u>in</u> <u>forma</u> <u>pauperis</u> and to <u>sua</u> <u>sponte</u> dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be

granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] which was previously applied to determine if a federal complaint stated a claim.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  To survive dismissal under Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Iqbal, 129 S. Ct. at 1949 (citation omitted).  Officials may not be held liable under § 1983 for the unconstitutional misconduct of their subordinates.  Id. at 1948-49.  Rather, the facts set forth in the complaint must show that each government-official defendant, through the official's own individual actions, has violated the plaintiff's constitutional rights.  Id.  This Court must disregard labels, conclusions, legal arguments, and naked assertions.  Id. at 1949.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief", and will be dismissed.  Id. (citations and internal quotation marks omitted).

---

[2]  The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

The Third Circuit instructs that, to determine the sufficiency of a complaint under the pleading regime established by Iqbal,

> a court must take three steps:  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Township, 629 F. 3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief*.  A complaint has to "show" such an entitlement with its facts") (emphasis supplied).  The Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983.  See Iqbal, 129 S Ct. at 1947-48.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

>      declaratory decree was violated or declaratory relief was
>      unavailable.

42 U.S.C. § 1983.

Plaintiff names Steven Johnson as defendant, but the Complaint fails to assert facts describing any wrongdoing by Johnson himself.  "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* [and] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S. Ct. at 1948.  In Iqbal, the Supreme Court rejected the proposition that a supervisory defendant can be liable for "knowledge and acquiescence in their subordinates' [misconduct.]"  Id.

>      [Plaintiff's] conception of 'supervisory liability" is inconsistent
>      with his accurate stipulation that [persons] may not be held
>      accountable for the misdeeds of their agents.  In a § 1983 suit or a
>      Bivens action - where masters do not answer for the torts of their
>      servants - the term "supervisory liability" is a misnomer.  Absent
>      vicarious liability, each Government official, his or her title
>      notwithstanding, is only liable for his or her own misconduct.

Iqbal, 129 S. Ct. at 1949.

As Plaintiff fails to assert facts showing that Steven Johnson violated Plaintiff's federal rights, the Complaint fails to state a claim against Johnson under the Iqbal pleading standard and the Complaint will be dismissed as against Johnson for that reason.

Plaintiff also names Judge Dennis Cavanaugh as defendant.  Although Plaintiff's allegations are not a model of clarity, it can be inferred that Plaintiff's claim against Judge Cavanaugh is based on Plaintiff's dissatisfaction with Judge Cavanaugh's conduct and rulings in the consolidated case entitled Alves v. Ferguson, Civil No. 01-0789 (DMC) (filed Feb. 15, 2001),

which docket number Aruanno refers to in the Complaint.  This Court takes judicial notice of the docket in Alves.  Joseph Aruanno is one of several consolidated plaintiffs.  On August 12, 2009, Aruanno "appeal[ed] the decision of the District Court judge, Dennis M. Cavanaugh, denying Plaintiffs Motions for an Injunction, or Temporary Restraining Order, to prohibit the state defendants from moving us to another facility that is even more harmful than the one that we have been forced to live in for over ten years now."  Alves v. Ferguson, Civil No. 01-0789 (DMC) (Docket Entry No. 90).  On September 17, 2009, the Third Circuit Court of Appeals dismissed Aruanno's appeal for lack of appellate jurisdiction.  Id. at Docket Entry No. 91.  On August on March 30, 2010, Judge Cavanaugh denied a similar motion to enjoin state officials from moving sexually violent predators to a different facility.  Id. at Docket Entry No. 115.

"A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for judicial acts."  Azubuko v. Royal, 443 F. 3d 302, 303 (3d Cir. 2006); see also Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); Abulkhair v. Toskos, 430 Fed. App'x 98, 100 (3d Cir. 2011); Gallas v. Supreme Court, 211 F. 3d 760, 770 (3d Cir. 2000).  Judicial immunity applies even to allegations of malice and corruption.  See Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir. 2000)  ("judges . . . are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly") (quoting Stump v. Sparkman, 435 U.S. 349, 355-6 (1978)).  Because none of Judge Cavanaugh's actions at issue in Aruanno's Complaint were taken outside his judicial capacity, the damage claims against Judge Cavanaugh are barred by absolute judicial immunity.  Moreover, Aruanno has shown no legal basis for granting injunctive relief against Judge Cavanaugh.  See 28 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act

or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable"); <u>Abulkhair</u>, 430 Fed. App'x at 100; <u>Azubuko</u>, 443 F. 3d at 303-04.  Accordingly, the Complaint will be dismissed as against Judge Cavanaugh.  As filing an amended complaint would be futile, this Court will not grant leave to amend.

### IV.  CONCLUSION

For the reasons set forth above, the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> and dismiss the Complaint with prejudice.

s/William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

Dated: November 8, 2011